[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-16901

_____

D. C. Docket No. 00-00941-CV-BU-E

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 16, 2003
THOMAS K. KAHN
CLERK

JERRY PAUL HENDERSON,

Petitioner-Appellant,

versus

MICHAEL W. HALEY, Commissioner of
the Alabama Department of Corrections,
ATTORNEY GENERAL FOR THE STATE
OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 16, 2003)

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

ANDERSON, Circuit Judge:

Jerry Paul Henderson ("Henderson") was convicted of murder in the state

courts of Alabama and received a death sentence. The district court denied

Henderson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on each of the several asserted constitutional claims for relief. In denying Henderson's petition, the district court concluded that many of Henderson's claims, including those alleging ineffective assistance of trial counsel, had been procedurally defaulted by Henderson's voluntary dismissal of his Rule 32 state post-conviction petition prior to any adjudication on the merits. After denying the writ, the district court granted Henderson a certificate of appealability to review the district court's rejection of the following two alternative arguments of "cause" to excuse his procedural default: (1) Henderson's waiver of his right to proceed under Alabama Rule 32 was not knowing, voluntary, and intelligent, because Henderson lacked a sufficient understanding of his rights and the actual legal claims being dismissed; and (2) Henderson's waiver was involuntary because it was the product of the undue influence of a Rule 32 counsel saddled by conflicting interests.

## I. BACKGROUND

On May 19, 1988, Henderson was found guilty of capital murder and sentenced to death in Talladega County Circuit Court in Talladega, Alabama. His conviction and sentence were subsequently affirmed by the Alabama Court of

Criminal Appeals. Henderson v. State, 583 So.2d 276 (Ala.Crim.App. 1990).[1] The Supreme Court of Alabama affirmed, Ex parte Henderson, 583 So.2d 305 (Ala. 1991), and the Supreme Court of the United States denied Henderson's petition for writ of certiorari, Henderson v. Alabama, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).

A.    State Post-Conviction Proceedings

On October 13, 1993, two Maryland attorneys filed a petition in the state courts of Alabama on Henderson's behalf, seeking post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32.[2]  Shortly thereafter, the two attorneys sought and received a withdrawal as counsel due to financial inability to continue on Henderson's behalf.  The court then sought to replace Henderson's counsel, first seeking the assistance of Lisa Borden, an Alabama attorney who had appeared as local counsel along with the two Maryland attorneys.  After Borden was unable to find substitute counsel for Henderson, Judge Fielding[3] granted her motion to withdraw on July 30, 1996, and appointed Steve Giddens ("Giddens") of

---

[1] This published opinion affirming Henderson's conviction and sentence provides a full, concise recitation of the historical facts concerning the underlying criminal offense. See 583 So.2d at 280-81.

[2] Henderson's trial attorneys apparently represented him throughout the direct review of his conviction and sentence, while new counsel initiated these state post-conviction proceedings.

[3] Judge Fielding also presided over Henderson's 1988 capital trial.

3

Talladega to represent Henderson in the Rule 32 proceeding.

On April 22, 1997, approximately nine months after Giddens' appointment, an evidentiary hearing was held in the Rule 32 proceeding. At that hearing, on behalf of Henderson, Giddens moved to dismiss the Rule 32 petition. Giddens explained that he had discussed the petition with Henderson and that his client was satisfied with his trial counsel and did not want to continue the claims of ineffective assistance or pursue any other challenges to his conviction and sentence. Giddens told the court that he believed that Henderson was fully aware of the situation and had plenty of time to consider the decision. Judge Fielding engaged Henderson in an extensive colloquy regarding his decision to dismiss the Rule 32 petition and its possible consequences.[4]

The court explained that Henderson's Rule 32 petition set forth allegations relating to his 1988 trial that would, if true, result in a new trial.[5] The court explained to Henderson that the dismissal would significantly impair Henderson's chances of any successful appeal from the Rule 32 proceeding as well as any

---

[4] See Henderson v. State, 733 So.2d 484, 485-88 (Ala.Crim.App. 1998) (quoting the entire colloquy between Judge Fielding and Henderson).

[5] See id. at 487 ("Do you understand that by filing this Rule 32 which is a post—collateral action really—that you are saying that something happened in the trial back in 1988 that would justify you getting a new trial. Do you understand that's what this Rule 32 is all about?").

chances of success in any subsequent action in federal court.[6] The court explained that the dismissal could speed up the date of his execution and would bring Henderson a step closer to having his sentence of death carried out.[7] To each of the court's explanations, Henderson acknowledged that he understood.[8] He also agreed that he was making his decision out of his own free will, knowingly, and voluntarily, and that no one had threatened, coerced, made promises, or tricked him into dismissing the petition.[9] After this extensive colloquy, the court found that Henderson's motion to dismiss his Rule 32 petition was being made knowingly, intelligently, and voluntarily. As a result, Judge Fielding granted Henderson's motion to dismiss from the bench, and on May 29, 1997 entered a formal order with findings of fact and conclusions of law consistent with his findings.

---

[6] See id. ("Do you understand that by dismissing this petition for Rule 32 that you could hurt any appeal that you may have further on in the state courts and also in the federal courts if you decide to file a petition after today. Do you understand that?").

[7] See id. ("Do you understand that by dismissing this petition that you could be speeding up your date of execution? . . .. Do you understand by dismissing this petition that you are a step closer to having your sentence to the electric chair carried out? Do you understand that.").

[8] See id. (reporting that to each of these questions by the court, Henderson responded, "Yes, sir. I understand that.").

[9] See id. ("And you are making this decision of your own free will, knowingly and voluntarily. Is that correct.?" . . .. "Yes, sir. It is." . . .. "And no one has threatened you, coerced you, made promises or tricked you into making this decision that you have told us about today?" . . .. "No, sir they haven't.").

Following the dismissal, Giddens and Henderson had no further communications with each other. On July 10, 1997, counsel from the Equal Justice Initiative in Montgomery, Alabama, filed a notice of appeal from the order dismissing Henderson's Rule 32 petition. In October of 1997, Henderson's current counsel took over and submitted a brief on behalf of Henderson to the Alabama Court of Criminal Appeals.

On appeal, Henderson argued that he "did not voluntarily, knowingly, and intelligently waive his post-conviction remedies under Rule 32," and asked the court to "reverse the order dismissing his Rule 32 petition and remand it to the circuit court for a full and fair evidentiary hearing." Henderson argued that he had seen the petition for the first time just the day prior to the dismissal and was never made aware of the specific allegations contained therein. Consequently, he claimed that he could not under those circumstances effectively waive his post-conviction remedies.

On August 14, 1998, the Alabama Court of Criminal Appeals affirmed, holding that the circuit court was correct in finding that Henderson possessed requisite mental competence to dismiss his petition and that he did so voluntarily, knowingly, and intelligently. Henderson v. State, 733 So.2d 484 (Ala.Crim.App. 1998). In reaching its conclusion, the Alabama appellate court considered the

colloquy between Judge Fielding and Henderson, and noted that Henderson was responsive and coherent during the colloquy and demonstrated "that he moved for a dismissal of the petition voluntarily, knowingly, and intelligently with an awareness of the consequences." Id. at 490. The court was satisfied that the record adequately illustrated that Henderson "understood the legal options available to him, and that he made a rational choice from those options." Id.

On October 19, 1998, the Supreme Court of Alabama granted Henderson's petition for writ of certiorari, but later reconsidered and quashed the writ on April 23, 1999. On October 27, 1999, Henderson filed a second Rule 32 petition in the Talladega County Circuit Court which was dismissed pursuant to Rule 32.2(b) (successive petitions) and (c) (statute of limitations) of the Alabama Rules of Criminal Procedure.

B.    Federal Post-Conviction Proceedings

1.    The 28 U.S.C. § 2254 Petition

On April 11, 2000, Henderson filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Alabama, pursuant to 28 U.S.C. § 2254, setting forth numerous constitutional claims for relief. Respondents, Michael Haley as Commissioner of the Alabama Department of Corrections, and William H. Pryor, Jr., the Attorney General of the State of

Alabama, argued that all of Henderson's claims that could have been raised in the Rule 32 proceeding, including his claims of ineffective assistance of counsel, had been procedurally defaulted. Some of these claims were raised in the Rule 32 petition dismissed by Henderson, while other claims could have been but were never raised in the state courts at all. Alabama argued that Henderson failed to properly exhaust these claims, and because the claims could no longer be raised in the state courts, they had been procedurally defaulted. Several of Henderson's § 2254 claims, however, were raised either at trial or on direct appeal, and could not have been raised in the Rule 32 petition. Respondents challenged these particular claims only on the merits, conceding that they were not procedurally defaulted.

As to the claims included in the Rule 32 petition, Henderson argued that he lacked a sufficient understanding of these claims at the time of his motion to dismiss, and therefore, his dismissal was not knowing, voluntary, and intelligent. From that, Henderson argued, the district court should find sufficient "cause and prejudice" to excuse his procedural default. Also, for the first time, Henderson pointed out that Steve Giddens, his Rule 32 counsel, was the brother of one of the prosecutors who participated in his 1988 trial. Rod Giddens,[10] Steve's brother,

---

[10] Any reference made in this opinion to "Giddens" refers to Steve Giddens, Henderson's Rule 32 appointed counsel. Rod Giddens, Steve's brother, will be referred to hereinafter in this opinion only by either his full name, as "Steve's brother," or simply as "Rod."

second-chaired Henderson's prosecution, examined several witnesses, and delivered parts of the state's closing argument in both the guilt-innocence and penalty phases of the trial. Henderson also noted for the first time in his federal petition, that Steve Giddens was a lifelong friend of the murder victim's brother, a local police officer named Billy Haney. Because of alleged conflicts arising from these relationships, Henderson argued that the dismissal of his Rule 32 petition was the product of the undue influence of Steve Giddens, his Rule 32 counsel, and therefore was not a knowing, voluntary, and intelligent waiver. On January 18, 2001, the magistrate judge entered an order directing an evidentiary hearing to be held.[11]

---

[11] The magistrate judge's order outlined the following issues to be addressed at the hearing:

(1) What petitioner was told by his attorney, Steve Giddens, prior to dismissing his Rule 32 petition in state court;

(2) Whether Steve Giddens was aware at the time of petitioner's Rule 32 proceeding that his brother had prosecuted petitioner; whether he discussed this fact with petitioner; and if he did not discuss this fact with petitioner, why he did not do so; and

(3) If Steve Giddens did not discuss with petitioner the fact that his brother had prosecuted petitioner, whether the lack of disclosure deprived Henderson of the opportunity to make a knowing, intelligent and voluntary waiver of his right to pursue collateral relief, such that the state court's finding that petitioner knowingly, intelligently and voluntarily waived his right to pursue collateral relief is an unreasonable determination in light of the evidence presented.

On June 18, 2001, Respondents objected to the holding of an evidentiary hearing, arguing that Henderson had not developed a factual basis for this claim in his state court proceedings, and therefore had not demonstrated that he was entitled to a hearing under 28 U.S.C. § 2254(e)(2). The magistrate judge overruled the objection and proceeded with the evidentiary hearing.

### 2.    The Evidentiary Hearing

The evidentiary hearing on June 25, 2001, focused on three issues:  (1)  Was Petitioner's attorney, Steve Giddens, acting under a conflict of interest when he represented Petitioner at the hearing wherein Petitioner waived his right to the Rule 32 hearing?  (2)  If so, was Petitioner aware of it?  (3)  If there was a conflict of interest, did it prejudice Petitioner, i.e., did Petitioner's attorney improperly influence Petitioner to dismiss his Rule 32 proceeding?   At the hearing, two witnesses testified:  Steve Giddens and Jerry Henderson.  Giddens testified that he was admitted to the bar in 1986 and opened a solo practice in Talladega.  In 1989, he began to work for Legal Services Corporation of Alabama.  Giddens returned to solo private practice in 1991, and continued to practice in that capacity until he was elected Talladega County's District Attorney in 1998.  Talladega is a town of about 20,000 people with perhaps thirty-five to forty attorneys with offices there with about eight to ten of those attorneys principally involved in the practice of criminal defense law.

Giddens testified that his brother, Rod Giddens, was a former assistant district attorney in Talladega County, and was one of the prosecuting attorneys at

---

Because we resolve this case in favor of Respondents on other grounds, we decline to address the propriety of the magistrate judge's holding an evidentiary hearing.

10

Henderson's 1988 capital murder trial. Giddens testified that he and his brother are close with one another, and visit each other "several times a week." No longer a prosecutor, Rod now practices as a criminal defense attorney in Talladega. In fact, at the time during Steve Giddens' representation of Henderson on his Rule 32 petition, he shared office space with Rod. Nevertheless, Giddens testified that until he received the federal district court's notice to appear at the June 25, 2001 evidentiary hearing in this case, he was unaware that his brother had participated in Henderson's 1988 prosecution.[12]

Steve Giddens also testified that he is friends with Billy Haney, a local police officer and brother of the victim. Their friendship dates back to the 1970s. Giddens testified that he expressed his condolences to Billy Haney upon the death of his brother. Giddens admitted that he never told Henderson about his relationship with the victim's brother.

Giddens testified that at some point after Judge Fielding appointed him to represent Henderson in the Rule 32 proceeding, he reviewed the court file

---

[12] Giddens explained that he had never known his brother to second-chair in a capital murder case while working as a prosecutor. Giddens acknowledged, however, that the district attorney's office had only four assistant prosecutors with two of those four individuals working only part-time. Also, Rod Giddens' name appears on one of the face sheets of the record, and as the direct-examiner of five prosecution witnesses and the deliverer of parts of two closing arguments, his name appears within several different parts of the trial transcript. Because he reviewed only small parts of the record in his preparation for the Rule 32 proceeding, Giddens claimed that he never came across his brother's name in the record.

containing the Rule 32 petition. He determined that most of the claims set forth in the petition were ineffective assistance of trial and appellate counsel. Giddens reviewed a small part of the trial transcript that included "some of the voir dire" and "some of the pretrial motions." Giddens testified that his quick review of parts of the record convinced him that most of the claims in the Rule 32 petition were without merit. Giddens testified that he based this opinion at least in part on the fact that he personally "knew the attorneys and . . . just didn't feel like they were ineffective" in light of what he had ascertained from the media coverage of the 1988 trial. Giddens did not recall attending the Henderson trial, but "may have." He conceded that it was a high profile case in Talladega generating a great amount of publicity. Giddens acknowledged that from these reports, he had already formulated an opinion that Henderson was probably guilty. Giddens even conceded that he had felt that Henderson "had gotten what he deserved." Yet, when Judge Fielding appointed him to represent Henderson, Giddens testified that he did not pause, or feel any concern about the appointment.

Giddens stated that he first met Henderson at the county jail the day before the April 22, 1997 hearing on the Rule 32 petition. During the approximately nine months that had transpired since his appointment, no prior communication of any sort had taken place with Henderson via mail, telephone, personal contact, or

12

otherwise. Giddens introduced himself, explained to Henderson the nature of the proceeding, went over the nature of the claims with Henderson, and told him that most of the claims alleged ineffective assistance of trial and appellate counsel. Giddens informed Henderson what evidence could be presented the next day at the evidentiary hearing and what type of potential relief was available. Henderson "responded that he was not sure what this was all about, that he did not have any problem with his attorneys because he was guilty, and that they did as well as they could do defending a guilty man." Giddens testified that he was surprised that Henderson was so candid and that after Henderson stated that he had no complaints about his trial attorneys, the "conversation took a turn in a different direction." Henderson and Giddens agreed that they would dismiss the Rule 32 petition at the hearing the following day. Giddens testified that he was prepared to go forward if Henderson so wished, and that if it was necessary for him to adequately prepare his arguments, he was certain that he could have requested and received a continuance. The entire meeting between Giddens and Henderson at the jail apparently lasted approximately thirty minutes.

Giddens did not recall reviewing any parts of the transcript of the penalty phase and did not "have an opinion" as to whether trial counsel had adequately presented mitigating circumstances to the jury. Giddens conceded that ineffective

assistance of counsel may be a basis for reversing a conviction or death sentence even of a "guilty" individual. Giddens acknowledged that he never asked Henderson if he wanted to be executed. Giddens testified that, based on their brief interaction, he was confident that Henderson understood Alabama's capital murder sentencing scheme, the concept of mitigating circumstances, and the fact that the application of the death penalty requires more than the mere guilt as to the murder itself. Giddens testified that his role during the Rule 32 proceedings was to protect Henderson's rights, but stated that he was not required to dissuade Henderson from dismissing the petition. Giddens did concede that "legal issues should be ferreted out by the attorney." If Henderson had wanted him to go forward, Giddens said that he would have. Giddens testified that he never prompted Henderson to do anything.

Henderson was the only other person who testified at the evidentiary hearing. Henderson testified that he was not aware that he had been appointed Rule 32 counsel after his Maryland attorneys withdrew as counsel. When he was transported from prison to the Talladega County Jail in April of 1997 for the Rule 32 proceeding, he did not know the purpose of the trip. Then, when Henderson met Giddens, he told Giddens that he did not know "what all of the Rule 32 meant." Giddens told him that he was claiming ineffective assistance of counsel.

14

Henderson told Giddens that he thought his trial attorneys "had done a good job with what they had to work with." Soon thereafter, according to Henderson, the two agreed that they would move to dismiss the Rule 32 petition the next day in open court. Henderson testified that if Giddens had told him that Giddens' brother second-chaired the prosecution and that the two brothers currently shared office space, he would have chosen not to go forward with Giddens as his counsel. He would have felt, if he had known this, that Giddens "would already have something against me from the get-go. It just wouldn't have felt right."

On cross-examination, Henderson acknowledged that, at the hearing that following day, Judge Fielding explained the consequences of withdrawing his Rule 32 petition. Also, Henderson conceded that, in his opinion, Giddens did not prompt him to dismiss his Rule 32 petition: "Prompt? I don't think he [Giddens] prompted me to. I think we settled our conversation and it basically come down to that's what I thought I wanted to do."

### 3. Habeas Petition Denied

On September 24, 2001, the magistrate judge filed a Report and Recommendation to deny Henderson's habeas petition. In this report, the magistrate judge determined that each of the claims that were raised in the Rule 32 petition that Henderson dismissed prior to an adjudication on the merits were

procedurally defaulted because Henderson had failed to properly exhaust his state remedies as to these claims, and now, by virtue of an independent state procedural bar, the claims could no longer be brought in state court.[13] As to the issue of whether there was sufficient "cause" to overcome this procedural default, the magistrate judge reached the following conclusion:

> [P]etitioner asserts that this waiver was not knowingly and intelligently made, even if voluntary. This argument is without merit. The record evidence is clear that petitioner knew he was giving up his right to a Rule 32 hearing. He may not have understood all of the issues that he was foregoing, but that is not necessary. What is important is that he understood that he was giving up whatever rights he had and that the result of that decision would hasten his execution. The purpose of the "knowing and voluntary" inquiry is to determine whether the defendant actually understands the significance and consequences of a particular decision and whether the decision is uncoerced. Clearly, petitioner understood the significance of what he was doing and the consequences thereof.
>
> Furthermore, the undersigned magistrate judge concludes that petitioner's Rule 32 counsel, Mr. Steve Giddens, was unaware of his brother's prior involvement in the original prosecution of Henderson and . . . there is no evidence that he exerted any undue influence on petitioner for that or any other reason. In short, Mr. Giddens' relationship to a prosecutor in this case was not a factor in petitioner's

---

[13] The magistrate judge also considered and rejected the several other claims for habeas relief raised in Henderson's § 2254 petition. Among these were fully exhausted claims that had not been procedurally defaulted. Considering these claims on the merits, the magistrate judge applied the standards set forth in 28 U.S.C. § 2254(d), and concluded that none of these particular claims had merit. The magistrate judge also explained that many of the other claims raised in Henderson's § 2254 petition were procedurally defaulted because they were never raised in the state courts on direct appeal or in the Rule 32 petition. Of course, these several other claims are not before us, as they were not included in the certificate of appealability.

16

> decision to waive his Rule 32 proceedings.
>
> Consequently, the undersigned magistrate judge finds that petitioner has waived those issues raised in his Rule 32 petition because he dismissed that petition and cannot show cause and prejudice sufficient to overcome this procedural default.

Report and Recommendation at 50 (internal citations omitted).

On October 31, 2001, the district court adopted the recommendation of the magistrate judge and entered final judgment denying Henderson's federal habeas petition. In its final order, the district court indicated that it had carefully considered the magistrate judge's report and recommendation, as well as Henderson's objections, and found that only one claim carried any "weight." That claims was whether "Rule 32 counsel's relationship as the brother of the prosecutor who played a minor role[14] in the trial resulted in a conflict of interest which in turn resulted in petitioner waiving the Rule 32 proceeding in a manner that was not knowing or voluntary." The district court explained that it was "unpersuaded that this argument is meritorious under the facts developed at the evidentiary hearing in this case and concurs with the Magistrate Judge's recommendation that this petition be denied."

4.    Certificate of Appealability Granted in Part

---

[14] We note that we would not describe Rod Giddens' level of participation in the prosecution of Henderson as constituting a mere "minor role."

17

Following the denial of his petition, Henderson moved in the district court for a certificate of appealability ("COA"). On January 29, 2002, the district court granted the COA as to Henderson's two arguments for cause:

> A certificate of appealability is GRANTED as to petitioner's claim that the waiver of his right to proceed under Alabama Rule 32 was not knowing, voluntary, intelligent and that petitioner was unduly influenced by an attorney with a conflict of interest, in that petitioner has made a substantial showing of the denial of a constitutional right. A certificate of appealability is DENIED as to all other claims raised by petitioner because he has not made a substantial showing of the denial of a constitutional right.

Henderson then moved this Court to expand the certificate and to stay the briefing schedule pending consideration of that motion. This Court granted the motion to stay the briefing schedule and, in a later order, denied the motion for expansion of the certificate of appealability.

## II. STANDARD OF REVIEW UNDER AEDPA

Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996. AEDPA applies to all petitions filed after its effective date. Since Henderson filed this petition on April 11, 2000, AEDPA

18

applies to this case.

AEDPA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[15]

---

[15] In Williams, the Supreme Court addressed the meaning of these AEDPA provisions. In a previous case, we summarized the Williams holding, stating:

> The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.

> A state court conducts an "unreasonable application" of clearly established federal

19

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact. Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The district court's determination of whether this standard has been met is subject to <u>de novo</u> review. <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir.

---

law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from the Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.

Lastly, § 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d). Clearly established federal law is not the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision.

<u>Putnam v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001) (internal citations and quotations omitted). Also, "[i]n applying the 'contrary to' prong of § 2254(d), we have recognized that where no Supreme Court precedent is on point, we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." <u>Isaacs v. Head</u>, 300 F.3d 1232, 1252 (11th Cir. 2002) (quoting <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1258 (11th Cir. 2000)).

Thus, section 2254(d)(1), with its "contrary to" and "unreasonable application of" prongs, sets forth two narrow circumstances in which a federal court may grant a writ of habeas corpus to a state prisoner. Section 2254(d)(2) sets forth one more. This third and last situation is where the state court's conclusion is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

2001), cert. denied, 535 U.S. 958, 122 S.Ct. 1367, 152 L.Ed.2d 360 (2002). A district court's findings of fact are reviewed for clear error. DeLancy v. Florida Dept. of Corrections, 246 F.3d 1328, 1329 (11th Cir. 2001). "Whether a particular claim is subjected to the doctrine of procedural default . . . is a mixed question of fact and law," subject to de novo review. Judd v. Haley, 250 F.3d 1308, 1313.

## III.  ISSUES PRESENTED

The district court granted a COA to review its conclusion that Henderson had not established cause to overcome the procedural default of the claims that he waived by dismissing his Rule 32 petition in the state court. In reaching this conclusion, the district court rejected the following two arguments for cause:  (1) the waiver of his right to proceed under Alabama Rule 32 was not a "knowing, voluntary and intelligent" waiver because Henderson lacked a sufficient understanding of his legal rights and claims as set forth in the Rule 32 petition; and (2) the waiver was involuntary as the product of undue influence by Steve Giddens, an attorney with a conflict of interest.

## IV.  DISCUSSION

Each of the federal habeas claims that Henderson had initially raised in his Rule 32 petition, but later dismissed prior to an adjudication on the merits, are procedurally defaulted. "A state prisoner seeking federal habeas relief cannot

21

raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Judd, 250 F.3d at 1313. Since Henderson failed to properly exhaust these claims in the state courts, and now is undeniably barred by firmly established and consistently applied state procedural rules from raising them,[16] the claims are procedurally defaulted, and our review is precluded by this adequate and independent state procedural ground.[17]

Henderson does not challenge the district court's conclusion that these claims have been procedurally defaulted. Acknowledging his state procedural

---

[16] If Henderson now filed a Rule 32 petition asserting the same claims he initially raised in the Rule 32 petition that he dismissed, the new petition would be barred by multiple procedural rules, including the rule against successive petitions and the statute of limitations. See Ala.R.Crim.P. 32.2 (b) ("If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial...shall be treated as successive . . .. The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner."); Ala.R.Crim.P. 32.2(c) ("[T]he court shall not entertain any [Rule 32] petition for relief from a conviction or sentence . . . . unless the petition is filed . . . within one (1) year after the issuance of the . . . judgment of the Court of Criminal Appeals [disposing of the direct appeal].").

[17] See Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

22

default, Henderson argues that the procedural default should be excused, and that he should not be barred from pursuing these claims for the first time in this § 2254 federal habeas proceeding. Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. See Murray v. Carrier, 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); Sykes, 433 U.S. at 87, 97 S.Ct. at 2506. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Id.; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002). Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. Murray, 477 U.S. at 495-96, 106 S.Ct. at 2678. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. Id.

Henderson attempts to overcome the procedural default in this case by

23

establishing "cause and prejudice."[18]  While constitutionally ineffective assistance of counsel has been considered cause to excuse a procedural default that occurs at a stage in the proceedings in which the defendant enjoys a Sixth Amendment right to the effective assistance of counsel, there is no constitutional right to an attorney in state post-conviction proceedings.  See Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991).  "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  Id.  Therefore, any ineffectiveness of Steve Giddens could not be considered cause for the purposes of excusing the procedural default that occurred in this case at the state collateral post-conviction level.  Id.; In re Magwood, 113 F.3d 1544, 1551 (11th Cir. 1997); Johnson v. Singletary, 938 F.2d 1166, 1174-75 (11th Cir. 1991). With AEDPA, Congress codified this rule by enacting § 2254(i), which provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

Recognizing that he has no argument for cause based on any purported

_____

[18] While alternatively suggesting in his brief that his execution would result in a "fundamental miscarriage of justice," Henderson has not attempted to offer any evidence to even suggest that he might be actually innocent of the underlying offense, and therefore has made no substantial argument under the fundamental miscarriage of justice exception to the doctrine of procedural default.

24

ineffectiveness of Giddens in the Rule 32 proceedings, Henderson presented two alternative arguments for cause, a "lack of understanding" argument and an "undue influence" argument. See supra at [M/S 21] (Section III. "Issues Presented"). As stated above, the district court rejected these two arguments for cause, but granted Henderson's request for a COA allowing him to seek review from this Court. We now address Henderson's two arguments for cause, conclude that Henderson has not shown cause on either ground, and affirm the district court's denial of habeas relief.

### A. Lack of Understanding

Henderson's first argument for cause is based on his alleged lack of a sufficient understanding of the actual claims contained in the Rule 32 petition he dismissed. Henderson argues that because of this failure, his dismissal was not a "knowing, voluntary, and intelligent" waiver of his legal rights. Henderson argues that under prevailing law, his waiver is ineffective unless it was "an intentional relinquishment or abandonment of a known right or privilege," and, according to Henderson, his was not. Thus, he argues that this court should find cause and excuse the procedural default created by the premature dismissal of his Rule 32 claims.

Henderson's argument that he lacked a sufficient understanding of the

claims set forth in the Rule 32 petition that he dismissed is more specifically confined to the "knowing and intelligent" prongs of the "knowing, voluntary, and intelligent" standard that he sets forth. With respect to his "lack of understanding" argument for cause, the argument Henderson presents is not one of lack of "voluntariness."[19] Rather, the argument focuses specifically on whether Henderson's alleged lack of understanding of the legal claims set forth in his Rule 32 petition rendered his decision to dismiss the petition not sufficiently "knowing and intelligent" to be deemed legally valid. We now turn to this question, while fully recognizing the AEDPA-mandated deference owed to the prior determination of the Alabama Court of Criminal Appeals as to this same issue in Henderson v. State, 733 So.2d 484 (Ala.Crim.App. 1998).[20]

Language from the Supreme Court's decision in Rees v. Peyton, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), has consistently been cited as setting forth the controlling legal standard for assessing the validity of a death row inmate's choice to forego post-conviction review. In Lonchar v. Zant, 978 F.2d 637, 641 (11th Cir. 1992), this Circuit addressed the question of whether Lonchar was competent to waive his right to collaterally challenge his conviction and death

---

[19] Voluntariness is the focus of Henderson's second argument for cause, discussed in the next section, that his dismissal was the product of the undue influence of Steve Giddens.

[20] See supra at [M/S 3-7] (discussing the state court's determination on this issue).

26

sentence. Quoting from <u>Rees</u>, this Court phrased the test as follows:

> Competency to forego further legal proceedings depends on whether the person whose competency is in question "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."

<u>Lonchar</u>, 978 F.2d at 641 (<u>Rees</u>, 384 U.S. at 314, 86 S.Ct. at 1506). Applying this <u>Rees</u> test in <u>Lonchar</u>, this Circuit affirmed the district court and held that the condemned person could forego further review of his conviction and sentence. <u>Id.</u> at 642. This Court noted that the district court had "found that Lonchar was able to understand his legal position and the options available to him" and "the consequences of not pursuing review of his conviction." <u>Id.</u> It concluded that "Lonchar could make a rational choice among his options," and according to testimony from a psychiatrist, after "considering his options and the quality of life in prison, [Lonchar] had decided not to oppose his conviction." <u>Id.</u>

Then, in <u>Ford v. Haley</u>, 195 F.3d 603, 605 (11th Cir. 1999), our Circuit considered another case where a death row inmate sought to dismiss his counsel and forego all further collateral challenges to his conviction and sentence. The district court found the inmate competent to forego further collateral relief. In so concluding, "[t]he district court held that under <u>Lonchar</u>, Ford need not understand

27

the particulars of each legal issue framed in the petition or the likelihood of prevailing on any or all of them, as his counsel argues." Id. at 615. Rather, Ford needed to exhibit "a basic understanding of the habeas proceedings" and understand "that without further proceedings he would be executed." Id. He needed to understand "the 'bottom line' of his legal situation - that he must continue to engage in the review process or be executed -[in order to be] able to make a rational choice among these options." Id. Upon review, this Circuit upheld the decision of the district court. In so doing, this Circuit stated that "[t]he district court applied the Rees test in the precise manner instructed in Lonchar." Id. at 617.

In Hauser ex. rel. Crawford v. Moore, 223 F.3d 1316 (11th Cir. 2000), a death row inmate "filed a waiver of all collateral and/or post-conviction relief proceedings." Id. at 1319. The state court appointed an attorney to represent the inmate. Id. The inmate filed a motion to dismiss the counsel and for permission to proceed pro se. Id. Despite the inmate's desire to proceed pro se and waive all rights to collaterally challenge his death sentence, attorneys from the Capital Collateral Regional Counsel ("CCRC") and Hauser's biological mother, purporting to act on Hauser's behalf, attempted to challenge the conviction and sentence in both state and federal court. Id. at 1319-20. On appeal from a § 2254 petition filed by CCRC, this Circuit concluded that the inmate was competent to dismiss the §

28

2254 petition.  <u>Id.</u> at 1322-23.

Relying on the Circuit's prior precedent in Ford and Lonchar to articulate the proper test, the panel in Hauser addressed whether the inmate "understood the '*bottom line*' *of his legal situation* - that he must continue to engage in the review process or be executed - and that he was able to make a rational choice among these options." Id. at 1323 (emphasis added). Then, the court acknowledged that the state court had previously concluded that the inmate "has the capacity to appreciate the allegations against him, has an appreciation for the range and nature of these proceedings and the appellate process, and has the ability to disclose facts pertinent to those proceedings." Id. The panel then noted that these findings are entitled to a presumption of correctness that can only be rebutted by clear and convincing evidence that the inmate is incompetent. The court easily found such evidence lacking and vacated the stay consistent with the inmate's expressed wishes. Id.

Applying the standard derived from the foregoing cases, we readily conclude that the state court's determination, see Henderson v. State, 733 So.2d 484 (Ala.Crim.App. 1998), in this case was not "contrary to, or [did not] involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1). Nor did the state court's determination result "in a decision that was based on an unreasonable

30

determination of the facts in light of the evidence presented." See 28 U.S.C. § 2254(d)(2). The record in this case, including the extensive colloquy conducted by the Rule 32 court prior to its granting of Henderson's motion to dismiss, see supra at [M/S 4-7], makes clear that Henderson understood the "bottom line" of his legal situation, that he had to continue to engage in the collateral review process or be executed, and that he was able to make a rational choice among these options. The colloquy also makes it clear that Henderson had a basic understanding of the purpose of the Rule 32 proceedings which he was deciding to abort, namely an effort to get a new trial. Thus, the district court correctly concluded that this "lack of understanding" argument for cause is without merit.[21]

---

[21] Henderson's brief on appeal makes a conclusory argument that the foregoing cases are applicable only in situations where the petitioner's mental competence is challenged, and should not apply in the instant situation. Henderson vaguely suggests that the Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), "knowing, voluntary and intelligent" standard is a different standard and that it should apply. Not only is Henderson's suggestion in this regard vague and brief, it is entirely lacking in any specification of the factual basis for his "knowing and intelligent" claim. However, it is clear from the entire litigation that the gist of Henderson's claim is that Giddens failed to explain to him the particulars of the legal issues framed in the Rule 32 petition to be aborted, so that he lacked a full understanding of the actual claims. Having identified the factual basis of Henderson's claim, it is readily apparent that it is wholly without merit. This court in Ford expressly held, in the same context of waiving further collateral challenges, that the petitioner "need not understand the particulars of each legal issue framed into the petition or the likelihood of prevailing on any or all of them." 195 F.3d at 619. Accordingly, we have no need in this case to decide whether some other case involving different facts might make it appropriate to apply some variation of the standard derived above from Rees, Lonchar, Ford, and Hauser.

Because we reject Henderson's lack of understanding claim on the foregoing grounds, we need not address whether his claim is the functional equivalent of an ineffective assistance of counsel claim and therefore barred because Henderson has no constitutional right to effective assistance of counsel in state collateral proceedings.

31

## B.     Undue Influence

Henderson's second argument for cause is that his decision to dismiss his Rule 32 petition was not made voluntarily because it was the result of the undue influence of Steve Giddens, his Rule 32 counsel.  This argument is based on the evidence presented at the evidentiary hearing in the district court including evidence that Giddens' brother second-chaired Henderson's 1988 trial, and that Giddens' friend Billy Haney, a local law enforcement officer in Talladega, was the brother of the victim of the murder committed by Henderson.  The district court considered the testimony of Giddens and Henderson, and concluded that Giddens' relationships were "not a factor" in Henderson's decision to waive his Rule 32 proceedings.  Henderson argues that this Court should reject the district court's determination that he was not unduly influenced by Giddens to dismiss his Rule 32 petition.

There is a threshold procedural issue that precedes any consideration of the merits of Henderson's argument that he was unduly influenced by Giddens.  Respondents argue that this argument was not properly exhausted in the state courts, has been procedurally defaulted, and therefore is now barred and should not be considered by this Court.  It is undisputed that Henderson did not present

32

this claim of undue influence at any point in the state court Rule 32 proceedings. Rather, for the first time in his § 2254 pleadings in federal habeas court, Henderson has raised the fact that Steve Giddens was the brother of one of his prosecutors and the long-time friend of the victim's brother and argued that Giddens unduly influenced him to dismiss his Rule 32 petition. Consequently, the state court never had the opportunity to consider whether the validity of Henderson's dismissal of his Rule 32 petition was compromised by his counsel's actions and these potentially conflicting relationships.

A state prisoner is ordinarily not able to obtain a writ of habeas corpus from a federal court unless he has exhausted the remedies available in the courts of the state. A claim is procedurally defaulted for the purposes of federal habeas review where "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991). Therefore, given the facts of this case, before we consider whether Henderson's undue influence argument provides cause to excuse the procedural default of his ineffective assistance claims, we must first determine whether this argument for cause can even be considered or whether it has itself been

procedurally defaulted by Henderson's failure to present it to the state court in the manner required by state procedural rules.

In this case, the issue is not whether an actual constitutional claim being asserted as a basis for habeas relief is procedurally defaulted. Rather, we consider whether an argument for cause to excuse a procedural default of a constitutional claim is procedurally defaulted in its own right. Because this would involve a double-layered application of the exhaustion and procedural default rules, we must first address whether these rules are even applicable in these circumstances to potentially bar Henderson from raising the undue influence argument as cause to excuse the procedural default of the constitutional claims asserted in the Rule 32 petition he dismissed.

While there are very few record cases involving a double-layered application of the doctrine of procedural default, the Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default. In Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this

34

ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. Id. at 451-53, 120 S.Ct. at 1593-94.[22]

With its decisions in Edwards v. Carpenter and Murray v. Carrier, see supra n.22, the Supreme Court has made clear that a procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the "cause and prejudice" standard with respect to the ineffective assistance claim itself. While the present case does not involve the attempted use of ineffective assistance of counsel as cause, we believe the rule set forth in Edwards applies to Henderson's argument for cause based on undue influence.

We believe this is an obvious and natural extension of Edwards and Murray,

---

[22] Edwards was not the first Supreme Court decision to address a situation involving the attempted use of an unexhausted claim as cause to excuse a procedural default. In Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court reasoned that a prisoner must be required to present his claim of ineffective assistance of counsel to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Id. at 488-89, 106 S.Ct. at 2646. But it was not until Edwards that the Supreme Court made it clear that the failure to properly exhaust the ineffective assistance of counsel claim actually resulted in a procedural default of the claim being asserted as cause, completely barring that claim from being used to excuse the procedural default of the underlying claim.

35

as all of the same reasons for applying the exhaustion and procedural default rules in <u>Edwards</u> and <u>Murray</u> apply equally here.[23]  No less than when the argument for cause is a procedurally defaulted ineffective assistance of counsel claim, allowing a procedurally defaulted undue influence argument to be presented as cause in this case would allow a federal district court to take steps toward upsetting a state court conviction without giving the state courts an opportunity to address those claims in the first instance.  <u>Edwards</u>, 529 U.S. at 451, 120 S.Ct. at 1591; <u>Murray</u>, 477 U.S. at 489, 106 S.Ct. at 2646.  The very principles of comity and federalism that underlie the exhaustion doctrine are equally undermined regardless of whether the procedurally defaulted claim is asserted as cause for a procedural default or is denominated as an independent ground for habeas relief.  <u>Murray</u>, 477 U.S. at 489, 106 S.Ct. at 2646.[24]

---

[23] Moreover, any other rule would not only permit the "cause claim" to escape the exhaustion and procedural default rules, but would also permit escape from the deference to state court rulings mandated by AEDPA, as there would be no state court ruling to which deference could be afforded.  This escape would be permitted, while at the same time, other claims for cause presented to the state courts, like Henderson's lack of understanding argument, would be subjected to AEDPA's deferential standard of review.  It would be completely anomalous for us to allow a claim for cause, never raised in the state courts, to occupy a much more favorable position in federal habeas court than a claim for cause that has actually been presented to the state courts.

[24] As with Henderson's lack of understanding claim, Henderson's undue influence claim seems to be merely a variation of a common ineffective assistance of counsel claim, this time grounded in counsel's alleged conflict of interest.  In light of our resolution of this case on other grounds, we need not address whether Henderson's claim is the functional equivalent of an ineffective assistance of counsel claim and therefore barred because Henderson has no right to

Thus, we hold that Henderson's undue influence claim is subject to the exhaustion requirement and doctrine of procedural default. Concluding that both of these rules apply, we will consider whether the rules were satisfied in this case. It is undisputed that Henderson has never argued, at any level of his Rule 32 proceedings in the Alabama state courts, that his Rule 32 dismissal was involuntary as the product of the undue influence of Rule 32 counsel. Rather, this argument for cause was raised for the first time in the district court § 2254 proceedings below. The exhaustion requirement, grounded in principles of comity and federalism, requires a habeas petitioner to first present his claims to the state courts before seeking relief in the federal courts under 28 U.S.C. § 2254. Section 2254(b)(1)(A) provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—the applicant has exhausted the remedies available in the courts of the State."[25]

---

effective assistance of counsel in state collateral proceedings.

[25] In order to establish proper exhaustion of state court remedies, a petitioner must have "fairly presented" the substance of his federal claims to the state courts by raising both the factual and legal premises of the claims for relief that are now being asserted in the federal habeas proceeding. The state court must have been given a fair opportunity to apply controlling legal principles to the facts bearing upon the claim now being raised. See Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); Anderson v. Harless, 459 U.S. 4, 6-8, 103 S.Ct. 276, 277-78, 74 L.Ed.2d 3 (1982); Picard v. Connor, 404 U.S. 270, 275-78, 92 S.Ct. 509, 512-13, 30 L.Ed.2d 438 (1971). Thus, the "lack of understanding" claim raised by

In this case, Henderson prosecuted an appeal of his dismissal of his Rule 32 petition. In that appeal, with the assistance of current counsel, he sought to have his Rule 32 dismissal vacated, thus reinstating his Rule 32 petition. As grounds for the relief he sought, Henderson argued that he lacked a sufficient understanding of his claims and legal rights to have made a legally valid "knowing, voluntary, and intelligent" waiver of rights. Instead of seeking relief only on this ground, Henderson could have also pressed his alternative argument that his dismissal was involuntary and should be set aside because it was the product of the undue influence of Steve Giddens. Additionally, Henderson likely could have sought post-judgment relief in the Rule 32 trial court, such as by filing a motion for new trial brought pursuant to Ala.R.Crim.P. 24.1, and stating as grounds that Giddens' alleged actions deprived him of a "fair and impartial [Rule 32] trial." See Ala.R.Crim.P. 24.1(c)(2) (setting forth the grounds by which a

_____

Henderson in the state court will not serve to satisfy the exhaustion requirement as to his "undue influence" claim, even if that is arguably a variation of the same "knowing, voluntary, and intelligent" argument. The lack of understanding claim did not involve any of the current allegations of undue influence and conflict of interest of Henderson's Rule 32 counsel. The undue influence claim relies upon facts and legal arguments never presented to the state court. That the lack of understanding claim was presented to the state court under the same general legal umbrella but with entirely different factual underpinnings does not constitute fair presentation of the undue influence claim. Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim. The undue influence claim clearly does not meet this standard. Thus, any suggestion that Henderson has properly exhausted the undue influence claim by exhausting his lack of understanding claim in the state court is without merit.

38

motion for new trial can be granted). See also Ala.R.Crim.P. 32.4 (stating that Rule 32 proceedings are "governed by the Rules of Criminal Procedure,"[26] and explaining that post-trial motions under Ala.R.Crim.P 24, including motions for new trial, can be sought from a Rule 32 judgment). A motion for new trial under Rule 24.1 and an appeal from the Rule 32 dismissal to the Alabama Court of Criminal Appeals clearly provided Henderson with a well-established procedure under state law by which he could have raised the issue of the alleged undue influence of Steve Giddens in this case. Thus, because Henderson failed to give the state courts one full opportunity to resolve Henderson's claim by invoking one complete round of Alabama's well established appellate review process, we conclude that he has failed to satisfy the exhaustion requirement as to the undue influence claim. See O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).

A claim is procedurally defaulted for the purposes of federal habeas review where "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman v.

---

[26] This is opposite to our federal practice, where petitions for writs of habeas corpus are governed by the rules applicable in civil cases.

Thompson, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991).  If Henderson were to now raise this undue influence issue in an effort to set aside his Rule 32 dismissal in the Alabama courts, it would be rejected on firmly established and consistently applied procedural grounds.  If brought as a motion for new trial under Rule 24.1, it would be barred as untimely, as motions for new trial must be brought within 30 days of judgment.  Ala.R.Crim.P. 24.1(b).  Alternatively, if brought as part of a new Rule 32 petition asserting the Rule 32 claims anew, it would be either barred by the statute of limitations, Ala.R.Crim.P. 32.2(c) (one year after judgment on direct appeal), or rejected as a successive petition under Ala.R.Crim.P. 32.2(b).[27]

Even though we conclude that Henderson has procedurally defaulted his undue influence argument for cause, our inquiry does not end there.  "To hold, as we do, than [Henderson's undue influence] claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not *itself* be excused if the prisoner can satisfy

---

[27] Henderson has presented no argument to the contrary.  In fact, Henderson filed a second Rule 32 petition in the Talladega County Circuit Court after his unsuccessful appeals in the original Rule 32 proceedings, but prior to filing this federal habeas petition.  This second Rule 32 petition was dismissed pursuant to Ala.R.Crim.P 32.2(b) and (c).  Apparently, Henderson did not appeal that disposition.  This court is aware of no reason why any attempt by Henderson to raise a new argument of undue influence in the state courts in a belated effort to set aside his original Rule 32 dismissal would not face this same procedural fate.

the cause-and-prejudice standard with respect to *that* claim." Edwards, 529 U.S. at 453, 120 S.Ct. at 1592. However, the undisputed facts of this case provide Henderson with no such argument for cause to excuse his failure to properly exhaust his undue influence claim in state court.

Steve Giddens' representation of Henderson ceased on the date of Henderson's dismissal of his Rule 32 petition, and no further communications occurred between these two individuals. Thus, any alleged undue influence ceased long before Henderson's Rule 32 proceeding made its way completely through the Alabama state courts. The Equal Justice Initiative timely filed a notice of appeal from the Rule 32 dismissal, and Henderson's current counsel prosecuted the merits of the appeal in the Alabama Court of Criminal Appeals. Nevertheless, no undue influence argument was presented. No claim has been made that Henderson or his counsel were ever denied any documents containing information regarding Henderson's capital trial and its participants and witnesses, including the trial transcripts. Not only is a plausible argument for cause not discernable by this Court upon its independent review of this record, Henderson has not advanced any argument of his own that his failure to raise the undue influence issue in the state court following the Rule 32 dismissal should be excused by this Court, and has presented no facts to this Court that could reasonably serve as a basis for excusing

such failure.

Because Henderson had an opportunity to raise this undue influence issue in either a post-judgment motion in the Rule 32 court or in his Rule 32 appeal to the Alabama Court of Criminal Appeals, or both, and because he has presented nothing to suggest that he was impeded in anyway from raising this argument, we agree with Respondents that this failure has resulted in an additional layer of procedural default for which no cause has been shown to excuse. As a result, Henderson's undue influence argument is itself procedurally defaulted without excuse, and therefore cannot be considered as cause to potentially excuse his procedural default of the claims he dismissed in his Rule 32 petition.

Even if it was not procedurally barred, we would still reject Henderson's undue influence claim on the merits. The magistrate judge held an evidentiary hearing in this case to determine whether Henderson's decision to dismiss his Rule 32 petition was involuntary as the product of the undue influence of Steve Giddens. After hearing substantial testimony from both Giddens and Henderson, and considering the arguments of counsel, the magistrate judge made factual findings that Giddens was unaware, during his representation of Henderson, that his brother had participated in Henderson's prosecution, and that Giddens in no way exerted any undue influence on Henderson for that or any other reason. Put another way, the magistrate judge expressly found that Giddens' relationship to his

brother was not a factor in Henderson's decision to dismiss his Rule 32 petition. This finding of fact has ample support in the record. Henderson's own testimony at the evidentiary hearing supports the magistrate judge's finding. Asked by his own counsel on direct examination whether he was prompted by Giddens to dismiss his Rule 32 petition, Henderson responded as follows: "Prompt? I don't think he prompted me. I think we settled our conversation and it basically came down to that's what I thought I wanted to do." From this testimony and from the testimony of Giddens, the district court found that Henderson was not unduly influenced into dismissing his Rule 32 petition. We conclude that this finding is not clearly erroneous. Thus, Henderson's "undue influence" claim also fails on the merits.[28]

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[28] In rejecting Henderson's undue influence claim, we also reject Henderson's argument that undue influence should be presumed. Assuming arguendo, but not deciding, that such a presumption theory might operate under some circumstances, and that the contours of such a theory would be as articulated by Henderson in his brief, we still would conclude that Henderson has failed to satisfy the test he proposes. Relying upon Alabama undue influence law applied in will contests as set forth in the case of Burns v. Marshall, 767 So.2d 347, 352 (Ala. 2000), Henderson argues that undue influence is presumed when: (1) there is a confidential relationship; (2) there is a dominant and controlling influence by the fiduciary; and (3) there is "undue activity" in procuring the action at issue. In the instant case, the magistrate judge found that Giddens exerted no undue influence on Henderson's decision because of the alleged conflicts or for any other reason. Thus, Henderson cannot satisfy the third prong of his own suggested test.

44