Dan Patrick **HAUSER,** by his next friends Zainna Fawnn **CRAWFORD,** and Gregory C. **Smith,** Petitioner–Appellant,

v.

Michael W. **MOORE,** Secretary Florida Department of Corrections, James Crosby, Warden, Florida State Prison, Respondents–Appellees.

No. 00–90028.

United States Court of Appeals, Eleventh Circuit.

Aug. 24, 2000.

Timothy P. Schardl, Heidi E. Brewer, Capital Collateral Representative, Linda McDermott, Office of the Capital Collateral Counsel, Tallahassee, FL, for Petitioner–Appellant.

Stephen Richard White, Dept. of Legal Affairs, Tallahassee, FL, for Respondents–Appellees.

Before DUBINA, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Dan Patrick Hauser is a Florida death row inmate. Hauser's execution was scheduled for 6:00 p.m., August 22, 2000; however, at 2:05 p.m. that same day, the district court granted a stay of execution. The state has filed with this court a Notice of Appeal and Motion to Vacate Stay of Execution and, alternatively, Motion to Dismiss any appeal by Capital Collateral Regional Counsel ("CCRC") and Crawford. Hauser has also personally filed a Motion to Vacate Stay of Execution in this

court. In his motion, Hauser requests that this court "see Next Friends petition for what it is, an anti-death penalty crusaders attempt to overwhelm the courts with volumes of paper work and stay the execution and subvert a competent defendants right to self-representation." Hauser also states that "Next Friends have no standing to present these claims and as such, Hauser contends that he retains all right to bring forth petitions on his own behalf."

## I. BACKGROUND

### A. *Facts*

The facts are taken verbatim from the Florida Supreme Court's decision affirming Hauser's conviction and sentence of death:

Hauser was indicted for first-degree murder, pled nolo contendere, and stipulated to the following facts. Melanie Rodrigues, an exotic dancer at Sammy's on the Island in Fort Walton Beach, left work at 2 a.m., January 1, 1995, and did not report for work later that day. Her partially nude body was found two days later beneath a bed in Room 223 of the EconoLodge near Sammy's. She had been strangled. Motel records showed that Room 223 had last been rented to Hauser, and when he was arrested the following month in Nevada, Hauser told police that he had been in Fort Walton Beach at the time of the murder, had visited several bars that night, but could not recall the latter part of the evening because he had been too drunk. Rodrigues' car keys, house key, and underpants. were found in his truck. Additionally, his fingerprint was found on a cigarette package next to her body.

At the plea hearing, Hauser admitted his guilt and the judge accepted his plea. Prior to sentencing, Hauser submitted a written request to meet with Investigator Griggs. When Griggs went to the jail, Hauser handed him a handwritten note containing the following statement:

On Dec. 31st at around 4:00 p.m. I started going to the local bars looking for a girl I could get to come back to my room. I went to all the strip joints in the area, but spent most of my time at Sammy's on the Island. When I first went to Sammy's I noticed one girl who seemed new and a little uneasy. So I kept up with what she was doing. For a few hours I had her and a couple other girls dance for me and also sat at the stage. I left and started going to the other clubs and bars, but there wasn't anything going on anywhere else so around 12:00–12:30 am I went back to Sammy's. I knew Satin had to have cash, I had given her around $100–150 during the night. After watching her for a while I knew if there was going to be anyone who I could get back to my room this would be the one. She was small, easy to overpower and new yet still making money.

For the next few hours I had her and a couple of other girls dance for me, then at around 2:00–2:30 I asked her if she wanted to make a couple hundred dollars to come back to my hotel room with me. . . .

. . . We went inside and she took off her clothes and started to dance, after dancing for awhile she came over to where I was sitting on the bed and grabbed at my pants, so I stood up and took off my clothes and we got onto the bed and had sex. We lay in bed for awhile then she got up and danced a little longer then had sex again. She lay next to me for around 30–45 minutes then said she had to get going home. So I stood up at the end of the bed and asked her to give me a hug. I was standing there in front of her thinking this is my last chance, if I want to kill her I am going to have to do it now! So just as we pulled apart I put my hands around her neck and threw her on the bed. I came down on top of her waist and pinned down her arms with my elbows. I put only enough pressure so she could not scream. I wanted to

watch the fear in her eyes. I let up so she could take a breath and just stared at her while she started to lose consciousness, then let her breathe again and said well this is it. I put as much pressure as I could and held it until she gave this shake and her body tensed up then went limp. To make sure she was dead I didn't let go for awhile. I put my ear to her chest to make certain I couldn't hear a heart beat.

*Hauser v. State,* 701 So.2d 329, 329–30 (Fla.1997).

B. *Procedural History*

Hauser filed a waiver of all collateral and/or post-conviction relief proceedings, and the circuit court appointed attorney Robert A. Harper to represent Hauser. Hauser, *pro se,* filed a motion to dismiss Mr. Harper as his counsel and requested permission to proceed *pro se.* The circuit court appointed a competency expert, Dr. James Larson, Ph.D., a psychologist, to evaluate Hauser and submit a written report. The circuit court then conducted a *Faretta*[1] hearing on March 29, 1999. At the conclusion of the hearing, the circuit court found Hauser to be competent to dismiss his court appointed attorney, and on April 7, 1999, granted Hauser's petition to proceed *pro se.*

On October 20, 1999, the circuit court appointed John Conan Harrison to represent Hauser in his clemency proceedings. The court conducted a hearing on Hauser's motion to dismiss court appointed counsel. On January 4, 2000, the court, finding that there had been no change in circumstances since the previous hearings, granted Hauser's motion to dismiss. The court found that Hauser had sufficient present ability to proceed *pro se* and represent himself in a competent manner. On July 18, 2000, Hauser submitted correspondence to the Florida Supreme Court and CCRC expressing his continued desire to represent

himself. Florida Governor Jeb Bush signed Hauser's death warrant on June 29, 2000.

On August 1, 2000, the Florida Assistant Attorney General filed a notice of filing and request for hearing asking the circuit court to conduct a *Faretta*-type hearing to determine if Hauser should continue to be allowed to proceed *pro se.* On the same day, Hauser filed a motion for summary judgment and dismissal of the state's request for a hearing, stating that his letters to the Florida Supreme Court and CCRC were "to inform them that any move to subvert my choice to represent myself" would, in his opinion, violate his constitutional right to represent himself.

In an August 3, 2000, order, the circuit court again found Hauser competent to proceed *pro se.* The court found that Hauser was "articulate in his written expressions with a rational and factual understanding of the proceedings." Specifically, the circuit court found that Hauser "has the capacity to appreciate the allegations against him, has an appreciation for the range and nature of the possible penalties that may be imposed upon him, understands the adversarial nature of these proceedings and the appellate process, and has the ability to disclose facts pertinent to these proceedings." The court noted that Hauser has never vacillated or wavered from his desire to represent himself. Therefore, the court concluded that Hauser "has made a knowing, intelligent, and voluntary decision to waive his right to representation and is competent to proceed Pro Se."[2]

On August 16, 2000, purporting to act on behalf of Hauser, Gregory C. Smith from the CCRC, and Hauser's biological mother, Zainna Fawnn Crawford, filed in the Florida Supreme Court, a "Motion For Stay Of Execution, Permission To Initiate Belated Appeal Or Other Proceedings,

---

**1.** *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

**2.** In an abundance of caution, however, the circuit court appointed attorney Michael A. Flowers as "stand-by" counsel to provide Hauser any legal advice if he so requested.

And For Appoint Special Counsel." CCRC and Crawford sought permission to file a belated appeal from the circuit court's determination that Hauser is competent to dismiss post-conviction counsel and proceed *pro se.* They also requested the appointment of a special counsel to ensure that all relevant evidence is presented to the courts. On August 18, 2000, the Florida Supreme Court denied the motions, finding that CCRC and Crawford did not have standing pursuant to *Durocher v. Singletary,* 623 So.2d 482 (Fla. 1993). *See Hauser v. Moore,* 767 So.2d 436 (Fla.2000).

On August 18, 2000, the CCRC filed a "Notice to Court" stating that it had discovered several significant factual and legal matters that were not disclosed to the state circuit court in its prior considerations concerning Hauser's competency to waive post-conviction representation and proceedings. The CCRC requested that the circuit court take any action it deemed appropriate, including appointment of a special counsel to present this significant evidence to the court. The state filed a response, arguing that the CCRC has no standing to file anything purportedly on Hauser's behalf. The state further argued that Hauser's competent assertions of his right to self-representation preclude any counsel from pleading on his behalf. The state noted that Hauser has been consistent over the past three years in asserting his right of self-representation and in making a knowing and intelligent waiver of his right to post-conviction counsel and proceedings.

The circuit court conducted a telephone conference on August 21, 2000, on the CCRC's "Notice to Court." Participating in the telephone conference were Hauser, his "stand-by" counsel Mr. Flowers, CCRC Special Assistant Capital Collateral Counsel Mr. Timothy Schardl, and Assistant Attorneys General Mr. Albert H. Grinsted, III, and Mr. Steve White. Mr. Schardl conceded that his office has no standing to file any pleadings on Hauser's behalf. He stated, however, that standing is not an issue because the CCRC did not request any relief in its "Notice to Court." Mr. Schardl stated that he felt an obligation to bring to the court's attention the significant psychological information contained within the pleadings CCRC previously filed in the Florida Supreme Court.

During the telephonic hearing, Hauser objected to the CCRC's attempt to present evidence on his behalf. He mentioned that the evidence the CCRC wished to submit was really "tools for mitigating issues for conviction or mitigation of the sentence, and as such, my decision to bring them before the Court." In response to the court's questions, Hauser acknowledged that he knew he would be put to death by lethal injection and he understood all the ramifications of the legal issues and defenses that he might have. Hauser further stated that all the evidence and arguments that CCRC presented are items "that should be my right to present in mitigation of either conviction or sentence." He succinctly stated the issue: "I think the issue here is am I competent right now to make this decision, not if any of these facts are true or false." Following the telephone conference, the circuit court dismissed the CCRC's "Notice to Court," finding that CCRC does not have standing to proceed on Hauser's behalf. The circuit court stated that it was bound by the Florida Supreme Court's decision in *Hauser v. Moore,* 767 So.2d 436 (Fla.2000), and Hauser was found to be competent to represent himself and no one appealed this decision. Concluding, the circuit court noted that Hauser's appointed stand-by counsel was available to him if he requested legal advice.

The CCRC and Zainna Fawnn Crawford, as next friends of Dan Patrick Hauser, then filed a 28 U.S.C. § 2254 petition in federal district court on August 21, 2000. In the petition, CCRC and Crawford allege five claims for federal court review. The state filed a response and the district court granted a stay of execution,

pending further order of the court, due to time constraints and the seriousness of the matter. The state then filed in the district court a motion to lift the stay, which the district court has not granted.

## II. DISCUSSION

█ We must first consider whether we have the authority to vacate the district court's stay. The standard of review of a stay of execution issued by a district court is abuse of discretion. *See Delo v. Blair,* 509 U.S. 823, 823, 113 S.Ct. 2922, 125 L.Ed.2d 751 (1993) (vacating as an abuse of discretion a court of appeals order granting a stay in a second or later petition case); *Delo v. Stokes,* 495 U.S. 320, 322, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990) (vacating as an abuse of discretion a district court's stay of execution in a fourth petition case).

█ This is a first petition case, filed by someone purporting to act as the condemned inmate's next friend, not by the inmate himself. In *Lonchar v. Thomas,* 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), the Supreme Court vacated our judgment setting aside the district court's stay of execution in a first petition proceeding. In doing so, the Court held that a district court could and should grant a stay in a first petition case unless the district court could dismiss the petition on the merits before the scheduled execution. *Id.* at 320, 116 S.Ct. 1293. ("If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot."). The present case is different from *Lonchar* because the "merits" here are not the merits of the underlying claims or any defense to them, but instead whether Hauser is competent to waive federal habeas review. Nonetheless, the Supreme Court's *Lonchar* decision provides us with guidance about what the rule should be in determining whether the stay ought to continue in this first petition, next friend case: the stay should continue if, but only if, necessary to provide the court with time to decide whether those purport-

ing to act on the inmate's behalf have standing to do so.

In *Bowersox v. Williams,* 517 U.S. 345, 116 S.Ct. 1312, 134 L.Ed.2d 494 (1996), the Supreme Court, in vacating the court of appeals' order granting a stay after the district court had denied one, said that "the surface implausibility of those claims persuade us that the stay should not have been granted." *Id.* at 346, 116 S.Ct. 1312. Applying *Bowersox* to this situation, we should certainly vacate the stay if the standing claims of those purporting to represent Hauser are implausible under the standing and competency law we enunciated and applied in *Lonchar v. Zant,* 978 F.2d 637 (11th Cir.1992), and *Ford v. Haley,* 195 F.3d 603 (11th Cir.1999) (*Ford II* ). Moreover, in *Delo,* the Supreme Court vacated a stay, concluding that it was an abuse of discretion "for a federal court to interfere with the orderly process of a State's criminal justice system in a case raising claims that are for all relevant purposes indistinguishable from those we recently rejected" in another decision. 509 U.S. at 823, 113 S.Ct. 2922. If the claim that Hauser is incompetent is materially indistinguishable from—certainly if it is not as strong as—the incompetency claim we rejected less than a year ago in *Ford II,* then under *Delo,* we should vacate the stay.

From the Supreme Court's *Lonchar, Bowersox,* and *Delo* decisions we draw the rule that we should vacate a stay of execution issued by a district court against the wishes of the death row inmate where continuation of the stay is not necessary in order to determine that those who sought the stay lack standing because the inmate is competent under the standards set down in established precedent. We do understand the position in which the district court found itself two days ago when the petition was filed the day before Hauser's scheduled execution. This was similar to the district court's situation in *Alabama v. Evans,* 461 U.S. 230, 233 n. *, 103 S.Ct. 1736, 75 L.Ed.2d 806 (1983), when a peti-

tion and motion for stay of execution was filed seven hours before the scheduled execution. Although the Supreme Court vacated the stay issued by the district court, in doing so it expressed understanding for "the difficult situation in which the district court found itself." *Id.* Notwithstanding our understanding about the position in which the district court found itself, we have an independent duty to rule on what has been filed in this court, which is the motion to vacate the stay of execution entered by the district court.

■■ Now we must consider whether CCRC and Crawford have standing to proceed on Hauser's behalf. The Supreme Court set forth the requirements for "next friend" standing in *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990):

> First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the party in interest.

495 U.S. at 163–64, 110 S.Ct. 1717, 109 L.Ed.2d 135 (citations omitted); *see also Ford II*, 195 F.3d at 624. CCRC and Crawford bear the burden to "clearly [ ] establish the propriety of [their] status and thereby justify the jurisdiction of the court." *Id.*

We have reservations that CCRC and Hauser's biological mother, who gave Hauser up for adoption, are "truly dedicated to the interests" of Hauser. CCRC did not enter these proceedings until recently and has never represented Hauser at his request. As Hauser himself stated, CCRC and Crawford's efforts appear to be motivated solely by their own desires to block imposition of the death penalty in an "attempt to define justice as they see fit." The most logical "next friend" is Hauser's court-appointed counsel, Mr. Flowers; however, Hauser has expressed a desire that Mr. Flowers not file anything on his behalf.

■ In any event, for the reasons that follow, we conclude that CCRC and Crawford cannot establish that Hauser is unable to pursue his own cause due to mental incompetency. The record establishes just the opposite. In *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), the Supreme Court established the test for determining a petitioner's competency to waive post-conviction proceedings in a capital case. Applying the *Rees* test "involves a determination of (1) whether that person suffers from a mental disease, disorder, or defect; (2) whether a mental disease, disorder, or defect prevents that person from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder, or defect prevents that person from making a rational choice among his options." *Lonchar*, 978 F.2d at 641–42; *see also Ford II*, 195 F.3d at 617.

In *Ford II*, we affirmed the district court's findings that petitioner was competent to dismiss his § 2254 petition, discharge his counsel, and be executed. The petitioner suffered from depression and a personality disorder, thought he was going to sit at God's left hand and be an important person, stated that he had many wives, concubines, and children whom he had visited in various parts of the world, and that he had once "visited Heaven." 195 F.3d at 612–13. The district court, relying on the three-prong test enunciated in *Lonchar*, found Ford to be competent. The district court in *Ford II* noted that in *Lonchar*, the Eleventh Circuit had found Lonchar competent because he knew what he had been charged with, the penalty that had been given, and the ultimate outcome if the penalty was imposed on him. *See id.* at 615. Moreover, this court had acknowledged that Lonchar was competent because he exhibited a basic understanding of the habeas proceedings, persisted in his

opposition to further review of his convictions, and stated that he understood that without further proceedings he would be executed. *See id.*

Therefore, the district court in *Ford II* found that Ford, like Lonchar, "understood the 'bottom line' of his legal situation—that he must continue to engage in the review process or be executed—and that he was able to make a rational choice among these options." *Ford II,* 195 F.3d at 615. The district court in *Ford II* also acknowledged that Ford suffered from "significant behavioral and emotional problems," but plainly understood that "in his legal situation, he must choose either to continue his legal challenges or be executed." *Id.* Furthermore, the district court found that Ford satisfied *Lonchar's* third prong because he had rational reasons for choosing to die: he was tired of languishing in prison; he was pessimistic he would ever get out of prison; and he truly believed he would be happier in the afterlife. *See id.* This court affirmed the district court's findings and conclusions in *Ford II.*

In this case, the facts establishing Hauser's competency are even stronger than those establishing Ford's competency in *Ford II.* Hauser clearly satisfies *Lonchar's* second and third prongs. The state trial court on several occasions determined that Hauser is competent to proceed *pro se* due to his repeated statements that he wished to proceed *pro se;* his letters to the court expressing his wishes; and his statements during the telephonic hearing that he understood the ramifications of his wish to proceed *pro se,* that he knew he would be executed by lethal injection, and that the evidence CCRC wanted to submit was really evidence of mitigation. The trial court concluded that Hauser "has the capacity to appreciate the allegations against him, has an appreciation for the range and nature of these proceedings and the appellate process, and has the ability to disclose facts pertinent to those proceedings." August

7, 2000, Order at 3. In reaching its conclusion, the trial court considered Dr. Larson's report. Moreover, during the *Faretta* hearing, Hauser acknowledged that he had a GED and took two semesters of pre-law college courses.

■ These subsidiary findings, and the ultimate decision that Hauser is competent, are factual in nature and are entitled to a presumption of correctness. *See Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990) (per curiam); 28 U.S.C. § 2254(e)(1). In order to rebut these findings, CCRC and Crawford must present clear and convincing evidence that Hauser is incompetent. They have failed to establish that there is any reasonable likelihood they can do so. For this reason, no "adequate basis exists for the exercise of federal power" in this case. *Demosthenes,* 495 U.S. at 737, 110 S.Ct. 2223. The stay must be vacated because the arguments for it are "for all relevant purposes indistinguishable from those we recently rejected," *Delo,* 509 U.S. at 823, 113 S.Ct. 2922, in *Ford II.* Binding Eleventh Circuit precedent[3] forecloses CCRC and Crawford's request to proceed as next friend. Accordingly, we hold that the district court abused its discretion in failing to vacate the stay because it is readily apparent that CCRC and Crawford have no standing to proceed on Hauser's behalf.

Based on the foregoing, we vacate the district court's August 22, 2000, order granting a stay of execution.

STAY VACATED.

---

**3.** *See Lonchar,* 978 F.2d 637, *Ford II,* 195 F.3d 603, and *Minerva v. Singletary,* 4 F.3d 938 (11th Cir.1993).